Case number 24-5638, United States of America v. Ricco Saine. Oral argument is not to exceed 15 minutes per side. Mr. Paulus, for the appellant, you may proceed. Good morning, Your Honors, and may it please the Court, it is my privilege today to introduce two students who worked on this case, one of whom graduated last year and wrote the brief and just found out that she passed the bar on Friday, and Damian Chafin, who is a third-year student in our Appellate Litigation Clinic and will conduct the substance of this morning's argument. Mr. Paulus, nice to see you, and we appreciate you coming this morning. Good morning, and may it please the Court, my name is Damian Chafin. I'm a certified legal intern working under the supervision of Attorney Andrew Paulus in counsel for the appellant defendant, Mr. Ricco Saine. I'd like to reserve three minutes for rebuttal, please. Your Honors, before the Court today is two decisions of the District Court that led to a highly prejudicial trial for our client, Mr. Saine. First, the District Court erred in denying Mr. Saine's motion to suppress evidence from a vehicle search, which rested solely on a K-9 alert incapable of distinguishing between legal and illegal cannabis. Compounding this error was the confusion between the District Court and the magistrate over the objection deadlines under Rule 59B. Second, it erroneously admitted a vague text message under Rule 404B, devoid of characteristics of the charged firearms, inviting a forbidden propensity inference that tainted the verdict on Count 5. I'd like to begin with the Fourth Amendment issue. Your Honors, a drug dog's alert can only establish probable cause if the dog is trained to detect illegal substances and nothing else. This principle is the cornerstone of the Supreme Court's ruling in place Kabbalist and Harris. K-9 alerts are only reliable for probable cause when they can detect contraband and nothing else. Why should we distinguish a K-9 smell of potential marijuana or hemp from what we've already held? A human smell of marijuana creates probable cause, even though it might also be hemp. So why, I mean, you're seeking to draw a very fine distinction because you do have this precedent of our Court that you have to deal with. Yes, the government relies heavily on the Santiago case, which established that the officer can't establish probable cause when smelling marijuana. But we think this case is a lot different than that, solely based on the K-9's nose is obviously a lot stronger than a human officer's. And the K-9 is going to mechanically alert to that odor instantly, as opposed to an officer who can use his experience and his contacts. So just like in the Santiago case, the officer testified that in his 10 years of working in law enforcement, he had never seen somebody smoking legal hemp. So he was able to use those contextual clues to discern that, hey, this person is probably smoking illegal marijuana and it's not hemp. If your rule is correct, then if you always have hemp in your car, the dog search is always invalid. Is that right? The probable cause alert is rested solely on the K-9 alert. That's what happened in this case? Yes, the probable cause determination was solely based on this. So what we're saying is if a dog can no longer only detect illegal contraband, then it shouldn't be put into service. So the fact that it can now detect illegal substances brings the dog's reliability downwards. The upshot of the rule you want us to write is that if the suspected criminal has hemp in their car, the dog sniff is always invalid. So the smart criminal always has hemp in their car and they can always conclusively challenge a dog sniff to say, well, it must have been hemp, it wasn't marijuana. This violates the fourth amendment. Well, I think criminals could possibly game a system like that. But I think the bigger risk here is that legal citizens are partaking in hemp. Hemp is legal on the federal level now since 2018. So I think there's a bigger risk to the law-abiding citizens that are legally using these products. As well as throughout the circuit, you have Michigan, you have Ohio, where marijuana is now legal. These were voted on by the citizens. Some passed by the legislature. That feels like a separate issue. That's true for every potential marijuana possession case. Half of the state's in the Sixth Circuit that there's this legality question. So maybe there'd be a question if there's not an issue about hemp. That's totally separate from hemp. That's just marijuana is legal. What validity should we give to a dog sniff or something else to behavior that's legal in the state but illegal federally? I think this is what you're saying, which is an important question. But that feels to me like a totally separate concern. Correct, Your Honor. I think when we're looking in the context of the canines, we've got to maintain their sue-generous, their unique ability in the fourth amendment context. So if this dog can no longer only reliably detect contraband, then it can't be put into service. And it can't be the sole reason to establish a probable cause. In the case that dogs can't be trained. That is correct, Your Honor. Same for humans? Well, humans can tell the smell of odor of burned cannabis or burned hemp. But just plainly based on smell, if it's not burnt, then no. Would you posit then that a canine should be trained only to recognize other drugs that they're using? Now we can only use them for cocaine, methamphetamine, and other things. But they can't be trained at all anymore, or at least to the extent they're used in states where they're on marijuana. Yeah, I think the passing of the 2018 Farm Bill legalizing hemp has caused this reliability of the dogs into question. So if officers want to continue to rely solely on a canine alert, then I think it has to be only on illegal substances. And the state of Tennessee, the Tennessee Supreme Court in State v. Green kind of took a similar approach where they say, Pat, now that hemp is legal in Tennessee, there is some ambiguity to the alert of a dog. So it could still be probative in a totality of the circumstances analysis of canine alert, but it can't be the sole determining factor for probable causes. Why wouldn't we just go back to general principles of probable cause, which is the idea that probable cause is less than a preponderance of the evidence. And just because there might be an innocent explanation for the potential criminality, that's not enough to vitiate probable cause. Why wouldn't that principle apply straightforwardly here? Yeah, it might be hemp defense, might be good if you get indicted or something to that effect. But at this early investigatory stage, why isn't the fact that it may be hemp, but also may be illegal marijuana enough to establish probable cause? Well, because I think if we're looking for probable cause, we need a fair probability that there's going to be contraband found in that vehicle. And that's what the hemp calls into question, is there no longer a fair probability that there's illegal contraband in that vehicle because anybody that goes to any gas station sees all the CBD products, all the hemp products. So we're no longer having a fair probability that when the officer does search the vehicle that there's going to be contraband. It's almost a statistical question, which I don't know the answer to, but it just depends. I mean, if the case were factually that 50% of the marijuana products in the market in the state are illegal, that's more than enough to create a fair probability, wouldn't you think? I think so, but we don't have those facts here, Your Honor. And I think that's one of the reasons why we think remanding this case to allow the district court to hear Mr. Sainz's objections could be beneficial. ...of expert testimony, hear from the TBI about their lab testing results, how much hemp is found in their state versus marijuana. So I think that's one of the reasons why we think it would be important to remand the case. If you are saying that the canine signal here can still be probative, right, how does that factor into the rest of the facts the officer may have relied on here for thinking that there might be an illegal substance in the car, right? If you have the canine alerts to the car itself, but you also have this VOLO notification, if that's how you say what it is, you have a particular motel that is known for drug dealing, how does the whole totality work? Even if we were to not apply the kind of Florida versus Paris, you know, the canine alert is enough for probable cause. Yeah, so I think the totality here, the government waived those arguments. In the footnote 7 of their brief, they specifically state that probable cause determination to search the vehicle rested solely on that canine's alert. So the question that's teed up for this court is whether the canine alert alone can provide probable cause. We addressed those other factors in our brief about the VOLO, about the high crime area. We think those arguments are also persuasive. But again, the way this is teed up for this court, the question presented is, can the canine alert alone establish probable cause? And I do want to touch, move to the text message issue as well, as I'm getting close to time here. So the government admitted into evidence, or sorry, the district court allowed the government to admit into evidence a vague text message under Rule 404B. The text message simply stated, I've got your gun and stuff, in which Mr. Sain responded, okay. Now, the government assertion that this proves knowledge begs the simple question, knowledge of what? There's no characteristics of that text message that can tie it to any of the guns charged in Account 5 of the indictment. And so all it did was create a propensity inference that the jurors could use to say that Mr. Sain is the kind of person that owns illegal firearms, and therefore it must be the illegal firearms listed here in Account 5 of the indictment. Would you agree if the type of gun were identified in the message, that was the Springfield, it was one of these guns, that then it could be admitted for knowledge and wouldn't be propensity evidence? Well, we do think that that would go a long way, because if the government is trying to prove constructive possession over one of the firearms in Account 5 of the indictment, like the case from the circuit Grubb stated, you can't use vague characteristics. But if they use specific identifying factors like the Springfield AR-15 or the Walther 380 pistol, I do think that would be enough to show knowledge of that firearm. But here that's completely lacking. If the message is somewhat vague and we're not sure which gun it relates to, why isn't that then a jury question, especially if the district court doesn't think that it's so prejudicial and that it outweighs any probative value? Why don't we leave that to the jury like we did with the Instagram photos, the kids' list photo, for example? Well, an Instagram photo, I think, is a lot different than just the text message, which is K with a one singular gun. So I think allowing that to get to the jury, you're inviting them to make a propensity inference. It's based solely because there's no way they could determine that one of the guns that was referenced in the text message was one of the guns in Account 5 of the indictment, and especially because there was other guns not charged in the indictment found in that home, and it was also a singular. So the government is trying to use it to show constructive possession over two guns in Account 5 of the indictment. She used the singular word gun in her text messages. So would you agree if the gun was referring to one of the guns in the indictment that 404B would just fall to the wayside, right? Yeah, if he was referring to one of the guns in the indictment, it wouldn't be carried by other acts of evidence. And so the first element of our 404B test is the district court is supposed to make a finding that the other event did, in fact, occur. So here I take it your argument would be the other event is possession of this other gun, theoretical possession of this other gun. But there was never any type of finding on this other act actually ever happening. So, I mean, why don't we say that that's an implied finding, that it was about the gun at issue, and then 404B just falls by the wayside. I see I'm out of time to respond to your question. Thank you, Your Honor. So I think under step one of the analysis finding the prior act occurred, I think we were looking at whether that text message occurred. So then we moved to step two of the analysis as to whether there was a missability of this other act for a proper purpose. And that's where the government continued to reiterate that. So that's interesting. Why do you think – I thought the prior act is a prior act of criminality, so it would be a prior gun possession. But you're suggesting that it's just the fact that the email – Well, it's just the fact that he sent a text message admitting that he, at some point, carried a firearm or had possession of a firearm. But we're disputing whether that's the proper purpose to go to knowledge of constructive possession under account five of the indictment because we can't determine what firearm he's speaking about. And I'll save the rest of my time for rebuttal. Thank you, Your Honors. Thank you, counsel. We'll hear from the government. Good morning. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. Mr. Sain's conviction should be affirmed for two reasons. First, the district court properly determined that the drug dog's alert to the presence of narcotics in Sain's truck provided probable cause to search it. Second, the district court properly admitted a text message exchange between Sain and his wife, which demonstrated Sain's constructive possession of the firearm stored in their house. I'd like to begin with the suppression issue. At the outset, I think it's important to note that while there's been a lot of discussion of the merits so far, there are, in fact, two procedural hurdles that should prevent this court from even getting to the merits of the issue that he's raised in this case. The first procedural hurdle is a waiver in that there was a report and recommendation prepared by the magistrate judge to which no objections were ever filed. And under this court's precedent, when a district court finds itself in that situation and this court on appeal finds itself in that situation, it treats any issues not objected to as waived. Now, I'll get to the timing and what the district court did in just a second, but I just want to also acknowledge the second procedural hurdle that's present, that even if you can get past the waiver, even if the court wants to look past the waiver, there's also a forfeiture here. These specific arguments that are now being made on appeal are not the same arguments that were made in the district court below. These arguments were never presented to the district court, to the magistrate judge, and, of course, not to the district judge because there were no objections filed. So we have two procedural hurdles to get over before we could even get to the merits. And that, I think, helps explain why when in your discussions with my friend, he was pointing out, well, there's lots of lack of evidence in the record to support this claim. The reason for that is because he never raised the claim. Was the issue raised at the motion to suppress hearing, the issue that we're dealing with now about the dog sniff and how much marijuana is legal versus not? There were questions, but there was not argument. And the questions didn't actually support the defendant's argument. There was no record established that cannabis and marijuana do, in fact, smell the same. And the officer, the canine officer, was specifically asked, would your dog alert on legal cannabis? And he said, I don't know. What I do know is that he has been trained to alert on four specific substances, marijuana, methamphetamine, cocaine, heroin, and he alerted on one of those substances. So there was actually an attempt to get the officer to concede that marijuana and cannabis would cause the same alert. And that concession was not given. And there was no evidence that was presented by defense counsel to establish that marijuana and cannabis have the same smell. And the magistrate didn't address that? The magistrate made comments about this in the R&R, but they weren't objected to. The arguments that defense counsel made at the hearing below, this sort of came out during cross-examination, but the actual arguments were it was improper to essentially run a drug dog around the car for some unknown reason that defense counsel believed. And the court said, no, I mean, clearly, officers could run a drug dog around the car there. And the other argument was that an alert to a car can't provide probable cause when the alert happens outside the context of a traffic stop. And the magistrate judge said, no, that legal argument is also incorrect because whether this happens in the context of a traffic stop or somewhere else, the alert is the alert and it provides probable cause or it doesn't provide probable cause. So those were the actual arguments that were made and rejected. And so this newly fashioned argument, which I commend counsel for making, it's a very nice argument, but it's just not an argument that was made below. And so I think there are those procedural rules. Do you think – I'm trying to – I was trying to think of the best analogy, just going to the merits. And one analogy I came up with is if you see somebody walking down the street with a firearm, is that enough to arrest them for being a felon in possession? Because if a felon possesses a firearm, it's illegal. But if a lawful person possesses a firearm, it's perfectly lawful. So I would think your answer should be no to do you have probable cause to arrest everybody walking down the street with firearms if it's illegal in the state. But how would you distinguish that from lawful marijuana versus unlawful – lawful hemp versus unlawful marijuana? Okay, so I think there are two responses to that question. So the first one in sort of direct response to that hypothetical that you gave, that would not provide probable cause. But what it probably would provide is reasonable suspicion to investigate further, right? It might make it reasonable for the officer to then go up to that individual and say, hey, do you have a carry permit if, for example, it's a state that requires something like that. Or, hey, I see you with a gun. Is everything going all right? Just sort of make contact, try and do some sort of reasonable investigation. That would probably – So why isn't that the answer? If a drug dog that's trained on marijuana can smell both, that gives you reasonable suspicion to ask them, do you have hemp? But it doesn't create probable cause. Well, I think it gives you more because – and I think this is where this absence in the record of statistics is really unhelpful is the Supreme Court's case law is pretty clear that in establishing probable cause, officers don't have to negate any innocent possible explanation that could be around. And we also – there's been a lot of focus today on hemp marijuana. What you have to remember is at the time this drug dog was run, the dog was trained on four separate narcotics. Marijuana was one. Cocaine, methamphetamine, and heroin were others. At the time the dog alerts, nobody knows at that moment if he is alerted on which of those substances he's alerted on. And it could have been all of them. He knows he's trained to alert on those substances, and he is alerted to the presence of one of those substances. The fact that the presence of one of those substances could have an innocent explanation of hemp doesn't make it unreasonable for the officers to think, hey, if I look in this car, I might find drugs. And that's the exact insight that this court repeatedly recognized in both Santiago, in McAllister. Those are cases where human officers made the detection, right? Yes, and I don't think the distinction should make a difference. Maybe it does. So it's obviously understood that humans are going to be carrying out law enforcement functions. So there's a human element to all of law enforcement. But a dog is separate. A dog is sort of like a device. They could have a technological device that does detection. They could bring in a dog. It's a non-human way of trying to detect criminality. And I might be willing to accept some margin of unreliability for human error, but if the government's bringing in a separate device, shouldn't we expect sort of a higher standard for that sort of non-human device that the government's officers rely on, whether it's a mechanical device or a dog? In other words, if they're the same, I can see why we accept the officer's investigation. Maybe there's some modest concern about it, but the dog isn't required to do the law enforcement. So why do we have to have a higher standard? I think the better reliability of dogs in detecting odors actually weighs in favor of the government's position here. Because when – because – So the dogs are better at detecting odors. Yeah, the dogs are – They're better at distinguishing between – yes, they're great. They smell. They can smell. And they are better at distinguishing between different odors. That's why you can train a dog to detect marijuana, cocaine, heroin. You can train them to – I know, but the problem here is you can't train them to distinguish between marijuana and hemp. I don't know about cocaine in this case. Well, as a factual matter, Judge Redler, you actually can train dogs to distinguish between marijuana and hemp. And there are dogs that are trained. Is this dog trained? This dog was not trained. And I think part of the – I mean – and, again, in future cases, maybe you're going to have situations where dogs are trained. The question is – That seems like an easier case. At the time – That seems like an easier case. It certainly would be an easier case. This is the harder case. It's only harder if we actually have evidence that suggests it's harder. Here we have no evidence in the record that the smell of marijuana and cannabis is, in fact, the same. That's all coming in through allegations and defense counsel's brief on appeal. There's no evidence to support that in the record. There's no evidence to suggest percentages like he wants to talk about. I think it's the government's position that they are – they smell different. You're just pointing to the absence of evidence. Our position is that dogs can and have been trained to distinguish between the two scents, so there is a distinguishing feature between the two scents. This dog has not been trained. This dog has not been trained to distinguish between the two. Is your argument that inherently they still potentially could distinguish or that they've only been trained on one, even though they've only been trained on one, that that still makes it more likely that they could distinguish? No, our argument is that it doesn't matter whether they can distinguish or not. The fact that the scent that the dog is smelling could be a legal substance doesn't negate probable cause because under the probable cause analysis, it's not even a preponderance. It's a pretty straightforward, would a reasonable person be justified in thinking there might be stuff in this car, there might be illegal stuff in this car. And on that view, on the rationale that this court has used in Santiago, McAllister, this meets the basic probable cause standard, that just because there's a possible innocent explanation for the presence of this smell coming from this car doesn't negate probable cause. Do you think when, if you go back to the 16 March presumption in Porter v. Harris, does it rest on an idea, like Judge Laser is talking about, that the dog is pretty much like a device that will get this right? And that's why it's okay that the canine alert alone is not hiding. Porter v. Harris has all this language in about it, like if there are circumstances surrounding a particular search that may undermine the case for probable cause, well then the presumption goes away, right? And why it's the circumstance that there is legal marijuana, you know, one of those things that makes the dog alert not this device that the Supreme Court was thinking about when it created the presumption. Well, I think treating the dog as a device and coming up with right-line rules is the exact opposite of what the Supreme Court said this should do and how it approaches dog sniffs and probable cause in Porter v. Harris. The court emphasized repeatedly this is the totality of the circumstances test. And we use general, as Judge Murphy said, we go back to general probable cause principles in assessing is the information that was presented to the officers in this case, the totality of it, such that would warrant somebody in believing the contraband is going to be found in a particular place. So are you saying that status of the canine alert in combination with the other totality factors here, like how located is Lolo and what's your press arching that you believe? So a couple points on that. First, we think that under this court's case law, which the district court was following, the dog alert alone is sufficient. But I think in every case, the court has to assess the totality of the circumstances. And the totality of the circumstances in this case further support the reasonableness of the search of the car. Because at the bottom line, the question the court answer is, was this search reasonable? And the search was reasonable because there was a drug dog alerted to the presence of narcotics in this vehicle. This vehicle was a vehicle that belonged to a known drug trafficker. There was a Lolo alert out that this guy had been distributing the very types of narcotics that this dog was trained to alert on. And this vehicle was found in an area that was known for high drug trafficking activity. And in fact, the officer testified he had made drug arrests and seen drug activity in that very area before. So I think when you consider the totality, in this particular case, this search is absolutely fine. But our position, and the reason we didn't focus on those other factors in our brief, is that under the law, the drug dog alerts alone provided the officers with probable cause to believe that the vehicle might contain contraband. This court has said that repeatedly in numerous decisions. And that principle, that the smell or odor of contraband emanating from a place creates probable cause to believe that place might contain contraband. Do you think if him became as ubiquitous as cigarettes, that the rule would be different? Doesn't it really depend on this empirical question? That's just not on the record? I would acknowledge that, yeah, there might be a need for a rule change or something at some point if there was such a drastic change in the facts. But a couple of points about why to make that argument is problematic here. First, there isn't any evidence in this record about the statistics. And also, this case happened in 2021. So the fact that there may be different things going on now in 2023, 2024, 2025, as was pointed out in the reply brief, I think is completely irrelevant as to what was going on in 2021. That's when the court should really be looking at. And what was going on in 2021, we know about that from McAllister, from Santiago, from the other cases that have assessed the situation at that point. So it's certainly possible that a rule might need to be modified in light of changed circumstances, changed facts. There's no evidence those facts have changed. And again, I don't think it's likely that the court's going to end up ultimately ever having to deal with that. Because as I pointed out to Judge Radler, what is happening now in recognition of the fact that cannabis is out there and hemp is out there is that dogs are being trained to distinguish between the two in light of these changing facts. And so I think we have changing facts. We also have responses to those changing facts. Can I switch to the rule 404B issue? Absolutely. I do think I was interested in your friend on the other side's comment that the other act was the email. I had in my head that the other act would have been another possession of another gun. And the email was just evidence of this other act. It seems to me there's this initial question that this court is supposed to engage in some type of prescreening, that you have to prove by preponderance of the evidence that the other act actually happened. And if the court found that, oh, the most likely indicator of this email was that this gun was one of the guns that were issued in the indictment, then rule 404B would just fall to the wayside. But I don't know that the court wasn't really raised all that well in the district courts. I mean, that's probably the reason. But the court never really made this evidence. I think it didn't. Well, I think it implicitly did, because it engaged in that kind of reasoning that you were just talking about, Judge Murphy. And I see that my time is about to elapse. I do want to finish answering your question. I think it's important to recognize the context in which this is presented in rule 404. This was not 404B evidence, because the government wasn't actually trying to put on evidence of another bad act. The context in which this was presented is there was a straw purchase that happened on September 4th. There was a text message sent on September 12th. And the government's whole theory of the case that we were presenting to the jury, the reason we were urging the jury to consider the text message, was because what the text message shows is that those guns that they purchased on November 4th and brought back to their house, he knew that he had the ability to exercise control over them. He showed that because when Tanya said to him, I've got your gun and stuff in my house, he responded, OK. That shows that he has constructive possession over which guns? The guns that they just bought. There wasn't any other guns that the government was talking about. We weren't presenting this for any 404B purpose. I think it's important to look at what 404B says. It's not about a piece of evidence in the abstract. It's about how that piece of evidence is being used by its proponent. And what 404B rightly says is, you as a proponent can't come in with a piece of evidence and say, well, you should look at this to show that this guy's a bad guy and he's always going to be a bad guy. That's wrong. And that's not what we were doing here. We were saying, this is evidence of this actual gun. And him saying, I was aware that I had control over the actual gun, that you just, through video evidence, saw him engaging in a straw purchase with Tanya. Is that surveillance video evidence from the store where the defendant is looking at the gun and checking it out, is that sufficient evidence for the possession of the gun? Well, it could be sufficient. But I think the reason why we needed the text message is the government bears the proof beyond a reasonable doubt. And that is a very heavy burden. We take that seriously. And it would have been plausible after viewing that video for a defendant to come in, for Mr. Sane to come in and say, yeah, I was handling that firearm a lot. And that's just because my wife, Tanya, she doesn't know about guns. I know a lot more about guns than she does. I was just trying to help her out. And yeah, you see me handling it a lot. But you should interpret that as me just being a nice husband helping her buy a gun for herself. And this text message really directly rebuts that view of that evidence. So while the government agrees that the best view of the evidence, which is the view we presented and the view that our expert, the store owner said, this looks like a straw purchase to me. This looks like Mr. Sane was the one who was really buying the firearms. We think that is the best view of the video. But a jury could have viewed the video another way. And so we really did need to have the evidence of the text message, the evidence of what Mr. Sane said when he was in the police car, what he blurted out about having an AR-15. It really supported the case. So I see my time is up. We appreciate everything. We thank you. Thank you, Your Honors. Your Honor, I want to first address the Rule 59B issue briefly. I'm sure Your Honors have seen the timeline, the confusion between the magistrate and the district court judge. We don't believe that these were waived. The magistrate, in releasing the order, specifically stated that she would set a time for the objections. She never set that any time for objections. She put the onus on herself, not on Mr. Sane. So it shouldn't be our responsibility to reset the timeline. The K-9 officer, as you pointed out, testified that the dog couldn't tell between illegal hands. And he mentioned the government multiple times. There's no evidence in the records to support any of these staff and address the need for this evidence. Well, it's the government's burden to establish the reliability of that dog. So the government's up here telling you right now that they don't know the reliability of this dog. And it's their burden to establish the reliability. And as Your Honor mentioned about the device, I wanted to touch on that briefly. And it shows the distinction between K-9s and police officer devices in the case where they are using thermal imaging devices that could detect illegal activity, illegal marijuana lamps, but also could detect somebody taking a shower. And I think that's exactly what we have here with this K-9 that can no longer reliably detect only illegal stuff. And now moving to the text message, the government has admitted up here that they needed the text message. That goes to show the prejudice in their brief. They never rebutted our prejudicial argument at all. The district court didn't really take a 403 analysis on the record. There's not much from the record to discern what the prejudice to our client would be. But the mere fact that the government admits that they needed the text message because they didn't think the video was enough shows that this can't be a harmless error. They needed the text message. They needed that evidence. Because in ruling in the Rule 29 motion, you see the district court judge ask the government, like Your Honor just did, is that video evidence of him briefly touching the weapons, is that enough for possession? Their answer was yes, but you see that it's not intuitive. It wouldn't be intuitive to the judge at the time and it wouldn't be intuitive to the jury if you briefly handle a weapon, you're exercising dominion and control over it. A juror doesn't think that when he goes to target and he briefly picks up a pair of jeans that he's exercising dominion and control over those items. So I think that really goes to show how vital that text message was and how prejudicial it was to our client, Mr. Sain, because it allowed the jury to then say, well, this is the kind of guy that admits to owning weapons. There was other weapons in the house. The officer testified that there was. There was a clock found when he photographed that's not charged in the indictment. So it could have been about that clock. The jury heard that, but they also heard evidence that Mr. Sain liked to own weapons and it invited them to make the exact propensity inference that 404B does not allow. So we ask that you remand this case for a new trial on all counts or to allow the district court to hear after that hearing. Thank you to both counsel, especially thank you to the Case Western Law Clinic for your excellent advocacy. The case will be submitted.